IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:09CR187** |
| vs. | |
| DANNY REAVES, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on Defendant's *pro se* motion for compassionate release. Filing No. 314. The government has not filed a response.

## I.   Background

On November 23, 2009, a jury found Defendant guilty of robbing an armored vehicle (Hobbs Act robbery) and discharging a firearm during the commission of that robbery. Filing No. 78. Subsequently, Defendant pled guilty to a separate charge of bank robbery. Filing No. 97 at 1. Pursuant to that Rule 11(c)(1)(C)[1] plea agreement, the parties agreed to a total sentence of thirty (30) years for all charges. Filing No. 97 at 4. Specifically, the plea agreement stated:

> Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that the appropriate sentence in this case is a total sentence of thirty (30) years imprisonment. This thirty-year term includes the ten-year mandatory minimum sentence required for the discharge of a firearm during the commission of the Rochester Armored Car robbery. The sentence will be twenty years on each of Counts I and III to be run concurrently to each other.
>
> The Court remains free to impose any term of supervised release up to five years.

---

[1] Fed. R. Crim. P. 11(c)(1)(C) (providing that government may agree to specific sentence or sentencing range and that agreed-upon sentence or range binds court once it accepts plea agreement).

Filing No. 97 at 2.  The plea agreement was silent as to the applicable guidelines.

On July 26, 2010, this Court sentenced Defendant to 360 months pursuant to the plea agreement.  Filing No. 129.  The plea agreement benefited Defendant insofar as the prosecutor agreed to drop Count II (another firearms charge), for which he "faced a mandatory minimum of seven years imprisonment consecutive to all other offenses. Additionally, Count IV would have required him statutorily to serve a minimum of 25 years imprisonment consecutive to all other sentences."  Filing No. 133 at 32–33 (Sealed Revised Presentence Investigative Report).  This negotiation was discussed at Defendant's change of plea hearing on February 1, 2010.  Filing No. 179 at 11–13.

Defendant is currently 52 years old, located at the Federal Correctional Institution in Pekin, Illinois, and his projected release date is March 17, 2035.

## II.      Legal Standard Compassionate Release

A court's ability to modify a sentence after it has been imposed is extremely limited. One way a court may modify a sentence is through "compassionate release" as outlined in 18 U.S.C. § 3582(c)(1)(A), which was modified by the First Step Act of 2018.  *See* Pub. L. No. 115-391, § 603.  Under 18 U.S.C. § 3582(c)(1)(A), prisoners may move to reduce their terms of imprisonment on their own after exhausting their administrative remedies. "Exhaustion occurs at the earlier of either (1) when the prisoner has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on [his] behalf or (2) 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner's] facility.'"  *United States v. Houck*, 2 F.4th 1082, 1083–84 (8th Cir. 2021) (alteration in original) (citing 18 U.S.C. § 3582(c)(1)(A)).

Here, Defendant has exhausted his administrative remedies with the BOP because more than 30 days have lapsed since the prison warden received his most recent request. *See* Filing No. 314 at 4 (showing that the defendant submitted a request to the warden on February 8, 2026). No response from the warden had been filed at the time Defendant submitted the present motion. However, Defendant filed a supplemental brief indicating that the warden denied Defendant's request for compassionate release on April 20, 2026. Filing No. 318 at 7. The Court therefore considers the merits of his motion.

Turning to the standards for compassionate release, the Court may, upon motion of the defendant, reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the Court finds that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

18 U.S.C. § 3582(c)(1)(A).

In this case, Defendant does not meet the requirements in subsection (ii), insofar as he is not at least 70 years of age and has not served at least 30 years in prison. Therefore, the Court will examine whether Defendant can establish extraordinary and compelling reasons for his release under subsection (i).

**A. Extraordinary and compelling reasons for release**

18 U.S.C. § 3582(c)(1)(A) provides in pertinent part:

3

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). The burden to establish an entitlement to sentence reduction is on the prisoner. *See United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022).

The Court notes that Defendant's reliance on *Buck v. Davis*, 580 U.S. 100 (2017) is misplaced. That case dealt with a prisoner seeking federal habeas relief under 28 U.S.C. § 2254, relief from judgment under Fed. R. Civ. P. 60(b)(6) and what specific "extraordinary circumstances" are required for granting relief. That analysis is not the same for what constitutes "extraordinary and compelling" reasons for release under 18 U.S.C. § 3582(c).

Likewise, Defendant's assertion that based on the Supreme Court's ruling in *Stokeling v. United States*, 586 U.S. 73 (2019), he would never have been charged with robbery, is without merit. Defendant seems to believe that the Supreme Court ruled that in order to be found guilty of robbery, there has to be a physical altercation between the victim and the criminal. That is not the case. Some states have an element of the criminal offense of robbery "overcoming victim resistance." In the states where this is an element, some of those states have required only very slight force to overcome victim resistance to meet this element. This nuance became an issue, because under the Armed Career Criminal Act, 18 U.S.C. § 924(e), violators that have three previous convictions for "a

4

violent felony" are subject to sentence enhancement.[2]   Mr. Stokeling, facing such a sentence enhancement for a weapons possession, objected to a previous Florida robbery conviction arguing it didn't qualify as a "violent felony" because Florida didn't have the "overcoming victim resistance" element of the offence.   The Supreme Court found that the Armed Career Criminal Act elements clause encompasses a robbery offense that requires the defendant to overcome the victim's resistance.   *Stokeling*, 586 U.S. at 87.

In any event, Defendant was not charged with robbery under a state law, and *Stokeling* does apply to the federal crimes for which Defendant was charged and ultimately was found guilty of or pled to.   Moreover, there is no dispute that firearms were used in both of robberies that Defendant was involved in and thus, this analysis wouldn't apply to this case.

### 1.      Medical Circumstances

First, Defendant alleges that he has shown extraordinary and compelling reasons for release based on his medical circumstances.   Section 1B1.13 of the United States Sentencing Guidelines sets out "Medical Circumstances of the Defendant" that can constitute "[e]xtraordinary and compelling reasons warrant[ing] reduction" in sentence for purposes of 18 U.S.C. § 3582(c)(1)(A).   These circumstances are as follows:

> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (B) The defendant is—
> (i) suffering from a serious physical or medical condition,
> (ii) suffering from a serious functional or cognitive impairment, or
> (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to

---

[2] Defendant was not charged as a career criminal.

provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—
(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. 1B1.13(b)(1).

The Court has reviewed the medical records that Defendant provided with his motion reflecting his health problems from 2014 to 2025. Filing No. 316. The documentation shows that Defendant suffers from chronic kidney disease ("CKD") stage 3, which Defendant acknowledges is *not* a terminal illness, nor is this disease "a serious medical condition that substantially diminishes the ability of [him] to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Filing No. 314 at 4–6, 8. Defendant indicates that he is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Filing No. 314 at 6.

First, Defendant cannot show that he has a condition for which treatment is not being provided by the BOP. The scant and incomplete medical records[3] that Defendant

---

[3] Defendant submitted approximately 20 pages of medical records encompassing more than a decade (2014 to 2025). Obviously, this is not a complete picture of his medical treatment while incarcerated.

provides are not entirely clear, but it appears that he was first diagnosed with CKD stage 3 in 2016. Filing No. 316 at 9. Defendant argues that his evidence indicates that he had symptoms of CKD dating back to 2014. Even if that were true, the Eighth Circuit Court of Appeals has recently held that low-risk delays in medical care are not a basis for compassionate release. *United States v. Rodriguez-Mendez*, 168 F.4th 1123, 1127 (8th Cir. 2026) (citing *United States v. Batista*, No. 24-12764, 2025 WL 1251220, at \*3 (11th Cir. Apr. 30, 2025). Moreover, Defendant has not shown that any delay in treatment has exacerbated his illness.

Next, Defendant believes that the BOP has mismanaged his care by treating his CKD through controlling his high blood pressure rather than treating some chemical imbalance allegedly brought on by oxidative stress. Defendant has high blood pressure which then contributes to his kidney disease; he is on blood pressure medication but indicates that he wants a specialized drug and/or diet instead. There is no requirement that the BOP provide every medication that a prisoner requests or provide a special diet. "[I]inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016), *as amended* (Mar. 4, 2016), (quoting *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007)).

Defendant's medical records show that on June 4, 2021, an ultrasound was conducted on his kidneys, and findings showed both kidneys were normal, and no hydronephrosis, and no masses were detected. Filing No. 316 at 22–23.

In September 2022, Defendant was seen by a nephrology specialist who indicated that Defendant "[o]verall has done quite well," since his last visit (unclear when that was

due to lack of complete medical records), but stated his "[b]lood pressure seems to be reasonably well controlled" and made no changes to his medication. Filing No. 316 at 9.

In October 2024, Defendant was seen in the "Chronic Care Clinic." At that time, his creatinine level was elevated. Filing No. 316 at 12. The treating doctor recommended that he increase his fluids and recheck his labs in one month. Filing No. 316 at 12. There are no medical records indicating what Defendant's levels were a month later when they were re-checked. While there is evidence that Defendant's creatinine levels fluctuate,[4] the evidence also shows that those levels are regularly monitored. What Defendant fails to provide is the follow-up care that he receives.

Similarly, there is some evidence that Defendant's blood pressure is high on occasion, but even the limited medical records indicate that his blood pressure is regularly monitored, and he is on medication for hypertension. *See* Filing No. 316 at 12.

"Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Gould*, No. 4:19-CR-40017-01-KES, 2021 WL 872694, at *4 (D.S.D. Mar. 9, 2021); *see generally United States v. Thompson*, 984 F.3d 431, 434–35 (5th Cir. 2021) (affirming denial of compassionate release to a defendant with medically controlled high blood pressure and high cholesterol, and a history of stroke); *United States v. Reed*, 464 F. Supp. 3d 854, 861 (E.D. La. 2020) (denying compassionate release to an inmate with high blood pressure, diabetes, coronary artery disease, and prostate cancer when the medical records showed that he was receiving adequate medical care for all conditions).

---

[4] Defendant's records indicate that his creatinine has tested low as well according to tests in 6/14/22 and 1/2/25 Filing No. 316 at 3–4.

8

Defendant has not shown that his medical condition requires long-term or specialized care that is not being provided by the BOP.  The evidence Defendant has provided shows that his CKD is, for the most part, being appropriately managed while in federal custody.  Defendant is being seen regularly by a specialist, and his creatinine and blood pressure levels are regularly tested.  The submitted evidence demonstrates that BOP is aware of the defendant's medical issues and is seeking specialized physicians for the defendant.  *See generally*, Filing No. 316; *United States v. Vangh*, 990 F.3d 1138, 1141 (8th Cir. 2021) (upholding denial of compassionate release where the defendant suffered from "serious health issues" but "did not quite meet the extraordinary-and-compelling-reasons standard" due to treatment provided by BOP).

Therefore, the Court concludes that Defendant's chronic kidney disease does not rise to the level of "[e]xtraordinary and compelling reasons" warranting a reduced sentence.  While not minimizing Defendant's unfortunate medical issues, the Court cannot find from the evidence submitted that this condition is not being adequately treated by his facility.

### 2.    Unusually long sentence

Defendant next argues that the 30-year sentence is an unusually long sentence for bank robbery.  In 2023 the Sentencing Commission added a new subsection in the guidelines dealing with unusually long sentences.  That subsection states:

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion

9

is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. 1B1.13(b)(6).

Defendant argues that he has served more than 10 years, and the prison sentence for his offenses would be significantly shorter if he were sentenced today under current law because the First Step Act eliminated the "stacking" of gun charges. Specifically, he references a provision of the First Step Act that non-retroactively eliminated the mandatory consecutive sentences for multiple firearms convictions under 18 U.S.C. § 924(c). Acknowledging that he pled guilty and agreed to the 30-year sentence, he argues that he would have negotiated a better deal if the "stacking" of firearms convictions had not been on the table.

Unfortunately for Defendant, on May 28, 2026, the U.S. Supreme Court issued the opinion of *Rutherford v. United States*, 146 S. Ct. 1320 (2026). In that case, the Supreme Court dealt with the issue of whether prisoners serving sentences under the "stacking" paradigm of 18 U.S.C. § 924(c) (requiring courts to impose mandatory minimums consecutively and thereby dramatically increasing sentences) could use the elimination of stacking as a basis for compassionate release under the policy language noted above. The Supreme Court said that the "gross disparity in sentence" could not serve as a ground for compassionate release reasoning it was a backdoor attempt to make the First Step Act retroactive which is not what Congress intended. *Rutherford*, 146 S. Ct. at 1335.

Consequently, the Supreme Court has closed the path for prisoners relying on the "stacking" argument to obtain compassionate release.

### 3.    Rehabilitation

Defendant indicates that in addition to the other reasons for early release, he is entitled to early release because he has "demonstrated exceptional rehabilitation."  He claims he hasn't had any infractions in the last eight years while being incarcerated; has served as a GED tutor; and has pursued education and vocational opportunities.

When considering these factors, a defendant's rehabilitation may be relevant but "is not, by itself, an extraordinary and compelling reason for" compassionate release.  *See United States v. Saldana*, 807 F. App'x 816 (10th Cir. 2020); 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). While Defendant's efforts at post-conviction rehabilitation are commendable, they do not overcome the other § 3553(a) factors that weigh against release.

### 4.    Other factors

Under § 1B1.13, the Court "*may* reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . [e]xtraordinary and compelling reasons warrant the reduction." U.S.S.G. 1B1.13 (emphasis added).  The relevant factors under 18 U.S.C. § 3553(a) in this case include the "nature and circumstances of the offense," "history and characteristics of the defendant," and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence," and "protect the public." 18 U.S.C. § 3553(a). Consideration of these factors indicate that granting compassionate release in this case would be inappropriate.

Defendant pled guilty to armed robbery of a bank in Omaha, Nebraska wherein he and an accomplice broke into a bank before it opened and then confronted the bank employee with firearms when she came in to open the bank.  A few months later he was found guilty of armed robbery of an armored car in which he engaged in a shoot out with the guards resulting in both one of the guards and the Defendant being shot.  These are serious offenses for which Defendant has never accepted responsibility.  Filing No. 133 at 12.  Thus, the severity of Defendant's offenses weighs against granting compassionate release.

Regarding the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), Defendant has a lengthy and varied criminal history apart from the two robbery charges.  As mentioned *supra*, Defendant was previously convicted of conspiracy to rob an armored car in 2004 and served approximately four years for that offense.  *See* Filing No. 133 at 19–20.  Defendant's criminal record contains convictions for multiple misdemeanor and felony convictions including possession of a deadly weapon, possession of a destructive device, and attempted escape.  Filing No. 133 at 17–19.  The robbery offenses as well as these previous convictions demonstrate that Defendant was undeterred by previous criminal punishments and lacks respect for the law.

The 240-month sentence imposed for the robberies (not including the mandatory minimum 120 months for the gun charge) under the terms of plea agreement was well above the 135–168-month guideline custody range.  Filing No. 133 at 32.  The Court asked about that departure at the sentencing hearing and the parties indicated this was agreed to pursuant to the plea agreement.  Filing No. 179 at 11–13.  However, reducing Defendant's sentence to time served would mean Defendant would serve 206 months.

That time is still significantly less than the 255–288 months[5] that was recommended under the Revised Presentence Investigative Report. Thus, this factor also weighs against granting compassionate release.

The Court has considered the remaining applicable § 3553(a) factors and finds that these factors do not favor reducing the defendant's sentence, either. Having evaluated the pertinent factors, the Court concludes that the defendant has failed to show that his release would not be contrary to 18 U.S.C. § 3553(a).

Accordingly,

IT IS ORDERED:

Defendant's Motion for Compassionate Release, Filing No. 314, is denied without prejudice to filing another such motion if his health deteriorates.

Dated this 10th day of July, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

[5] 135–168 months for the robberies plus 120 months for the mandatory gun charge.

13